FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 09, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

RICHARD M.,[1]

    Plaintiff,

v.

MARTIN O'MALLEY, Commissioner of Social Security,[2]

    Defendant.

No.   1:23-cv-03142-EFS

**ORDER RULING ON CROSS MOTIONS FOR REMAND AND REMANDING THE MATTER FOR FURTHER PROCEEDINGS**

Plaintiff Richard M. appeals the denial of benefits by the Administrative Law Judge (ALJ). The parties agree the ALJ erred when analyzing the medical

---

[1] To address privacy concerns, the Court refers to Plaintiff by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, and section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), he is hereby substituted for Kilolo Kijakazi as the defendant in this suit.

opinions, but the parties disagree about the appropriate remedy. After reviewing the record and relevant authority, the Court remands the case for further proceedings.

## I.   Background

This case has a long history and is before the Court on review for the third time, having been remanded once before on the Report and Recommendation of then-Magistrate Judge Mary Dimke, and once again by voluntary remand requested by the Commissioner. Here, the Commissioner requests remand a second time for further proceedings, with the concession that remand is required in part because the ALJ committed the same errors for which the case was previously remanded. Plaintiff alleges disability due to sciatica, pinched nerves, lumbar spondylosis, degenerative disc disease of the cervical spine, and left-hand numbness.[3]

Due to his pain and reduced functioning, Plaintiff protectively filed for disability insurance benefits on August 30, 2013, and later filed for supplemental security income benefits on February 25, 2014, alleging an onset date of March 30, 2010.[4] Plaintiff's claims were denied at initial and reconsideration levels and Plaintiff requested an ALJ hearing.[5] After his first hearing before ALJ Gordon

---

[3] AR 196, 865.

[4] AR 163, 182.

[5] AR 88, 96, 101.

Griggs on November 3, 2014, ALJ Griggs issued on unfavorable decision on March 13, 2015.[6] Plaintiff requested review by the Appeal Councils and on August 2, 2016, the Appeals Council denied review.[7] Plaintiff filed in this court and on February 21, 2018, the case was remanded pursuant to the Report and Recommendation adopted by the court.[8] On March 21, 2019, Plaintiff and his attorney appeared before ALJ Raymond Souza, but ALJ Souza stated that he would continue the hearing and schedule a consultative examination to develop the record.[9] On November 5, 2019, Plaintiff and his attorney appeared at a hearing before ALJ Virginia Robinson and on March 21, 2019, ALJ Robinson issued an unfavorable decision.[10] The Appeals Council denied review of Plaintiff's claim on November 17, 2020.[11] Plaintiff again filed suit in this court and on September 21, 2021, the case was remanded by the court for further proceedings at the request of the Commissioner.[12] On March 7, 2023, Plaintiff and his counsel appeared before ALJ Glenn Meyers and on March 17, 2023, ALJ Myers issued an unfavorable

---

[6] AR 18—33, 34—68.

[7] AR 1—6.

[8] AR 460.

[9] AR 387—395.

[10] AR 367—386, 396—424.

[11] AR 360—363.

[12] AR 939—946.

decision.[13] The Appeals Council denied review of ALJ Meyers decision on July 21, 2023.[14] Plaintiff filed the present action in this court.

ALJ Meyers found:

- Step one: Plaintiff met the insured status requirements through December 31, 2015. Also, Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 30, 2010.

- Step two: Plaintiff had the following medically determinable severe impairments: lumbar spondylosis, degenerative disc disease of the cervical spine, and left-hand numbness.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform sedentary work except that:

    [Plaintiff] is able to use his judgment to make simple work-related decisions; can frequently reach, handle, and finger with the non-dominant left upper extremity; has no restrictions with the dominant right upper extremity; can occasionally stoop and crouch; cannot crawl, kneel, or climb ramps, stairs, ropes, ladders, or scaffolds; cannot work at heights or in proximity to hazardous conditions; and must avoid vibrations.

---

[13] AR 858—882, 883—911.

[14] AR 851—857.

- Step four: Plaintiff is unable to perform his past relevant work as a car wash attendant (DOT 559.687-074) or a fruit packer (DOT 920.687-134).
- Step five: considering Plaintiff's RFC, age, limited education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a charge account clerk (DOT 205.367-014), a food and beverage order clerk (DOT 209.567-014), and a circuit board touch-up screener (DOT 726.684-110).[15]

Plaintiff now appeals ALJ Meyers' denial of disability and asks for an immediate award of benefits.[16] The Commissioner concedes the ALJ erred when evaluating the medical opinion evidence and when relying upon the vocational expert testimony at step five,[17] but the Commissioner asks the Court to remand the matter for further administrative proceedings because there are evidentiary conflicts that must be resolved by the ALJ.[18]

---

[15] AR 864-874.

[16] ECF Nos. 8, 13.

[17] The Commissioner also concedes that the ALJ erred in evaluating Plaintiff's subjective complaints, but Plaintiff offered no argument in his response brief that remand for calculations was warranted due to this issue.

[18] ECF No. 12.

## II. Analysis

### A. Remand Standard

When a harmful error occurs in the administrative proceeding, remand for further administrative proceedings is the usual course absent rare circumstances.[19] Three factors must be satisfied for the court to consider remand for payment of benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.[20]

When these factors are satisfied, the decision whether to remand for benefits or further proceedings is within the court's discretion, as it "is a fact-bound determination that arises in an infinite variety of contexts."[21]

---

[19] *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

[21] *Treichler*, 775 F.3d at 1100 (quoting *Harman v. Apfel*, 211 F.3d 1172, 1177 (9th Cir. 2000)).

**B.      Remand Analysis**

        1.      <u>Evaluation of Medical Opinion Evidence</u>

Plaintiff argues that the ALJ's errors in assessing the medical opinions warrants remand for calculation of benefits.[22] The Commissioner argues that because there is a conflict in the medical opinions, the proper remedy is for the Court to remand the case for further proceedings in which an ALJ should properly consider the medical and other testimony and resolve any conflicts.[23]

        a.      <u>Standard</u>

When Plaintiff filed his initial disability application, old regulations applied which required that medical opinions be assessed based on the nature of the medical relationship the claimant had with the medical provider. When a treating physician's or evaluating physician's opinion is not contradicted by another physician's opinion, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may be rejected for "specific and legitimate reasons" supported by substantial evidence.[24] A reviewing physician's opinion may be rejected for specific and legitimate reasons supported by substantial evidence, and

---

[22] ECF 13 at 2-6.

[23] ECF 12 at 12-14.

[24] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).

ORDER RULING ON CROSS MOTIONS TO REMAND - 7

the opinion of an "other" medical source[25] may be rejected for specific and germane reasons supported by substantial evidence.[26]

### b. *The ALJ's Findings*

The ALJ assessed the medical opinions and found as follows:

- The opinions of examining source Caryn Jackson, MD, are entitled to little weight.
- The opinions of Brent Packer, MD, who reviewed Dr. Jackson's report, are entitled to little weight.
- The opinions of state agency consultant Gordon Hale, MD, are entitled to some weight.
- The opinions of Heather Park-Skogen, MPT, are entitled to little weight.
- The opinions of Ilan Wilde, PA-C, are entitled to moderate weight despite the fact that he is not an acceptable medical source for the purpose of rendering opinions.
- The opinions of consultative examiner William Drenguis, MD, reflected in his narrative report are entitled to significant weight.

---

[25] *See* 20 C.F.R. § 404.1502 (defining who is an acceptable medical source for claims filed before March 27, 2017).

[26] *Molina*, 674 F.3d at 1111. The opinion of a reviewing physician serves as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

- The opinions of consultative examiner William Drenguis, MD in check-box form are entitled to moderate weight.[27]

  c. <u>Whether There is are Evidentiary Conflicts That the ALJ Must Resolve</u>

The parties agree that the second factor has been met with regard to the ALJ's evaluation of the medical opinions but disagree as to remedy. Plaintiff asserts that the case should be remanded for calculation of benefits because the ALJ's evaluation of the opinions of Dr. Jackson, Dr. Packer, Dr. Hale, MPT Park-Skogen, and PA-C Wilde held the same errors as the original opinion in the case and that the failure to properly evaluate them violated this court's first remand order of February 21, 2018.[28] But when considering the case, then-Magistrate Judge Dimke specifically stated in her report and recommendation that a remand for calculation of benefits was not warranted because it was not clear from the record that Plaintiff was disabled.[29]

It is notable that subsequent to this court's prior Order, the Administration requested the consultative examination which was performed by Dr. Drenguis on May 2, 2019.[30] The addition of Dr. Drenguis' consultative examinations and

---

[27] AR 870-872.

[28] ECF No. 13.

[29] AR 457.

[30] AR 796-809.

opinions complicates the records and further necessitates remand for resolution of conflicts. There are findings of Dr. Drenguis which are partially consistent and partially inconsistent with those of Dr. Jackson, Dr. Packer, and Dr. Hale; and additionally Dr. Drenguis has issued two differing sets of opinions which are partially consistent and partially inconsistent with each other.[31] Thus, based upon the record before the Court, it appears that further development of the record is required and that a resolution of the internal and external inconsistencies of the varying medical opinions is required.

The Court remands the case with the direction that the ALJ should properly evaluate all of the medical opinions in a manner consist with the law of the case.

2. <u>Error at Step Five in Relying on Vocational Expert Testimony</u>

As to the second issue alleged, the ALJ's improper reliance on vocational expert testimony that was flawed, the parties again agree the second factor is satisfied but disagree as to the appropriate remedy. The parties agree that the ALJ erred in relying upon the testimony of the vocational expert that there were 86,921 jobs available in the national economy which Plaintiff could perform.

Plaintiff argues two points. First, Plaintiff asserts that the jobs of charge account clerk, and food and beverage order clerk were inconsistent with the formulated RFC because they required a reasoning level of 3, and the RFC

---

[31] *Id.*

provided for a reasoning level of 2 or less.[32]  Additionally, Plaintiff argues that the number given for the sole remaining position of circuit board touch-up screener is inflated and that his own attorney's estimation of the total number of those jobs nationally is significantly lower according to Job Browser Pro software.[33]

The Commissioner concedes that two of the jobs given by the vocational expert are inconsistent with the formulated RFC.  The Commissioner asserts that even if the job numbers for the remaining job are low there is not overwhelming evidence of disability because a claimant is not disabled if there are a significant number of jobs in the region in which he lives and that the lack of regional jobs is a reason that the case should be remanded for further proceedings.[34] "Administrative proceedings are generally useful where . . . there is a need to resolve conflicts and ambiguities."[35] The Commissioner argues that remand for calculation of benefits is not appropriate.

        a.    <u>Standard</u>

At step five, the ALJ has the burden to identify specific jobs existing in substantial numbers in the national economy that claimant can perform despite

---

[32] ECF Nos. 8, 13.

[33] *Id.*

[34] AR 12 at 12-13.

[35] *Treichler*, 775 F.3d at 1101.

ORDER RULING ON CROSS MOTIONS TO REMAND - 11

their identified limitations.[36] At an administrative hearing, an ALJ may solicit vocational expert testimony as to the availability of jobs in the national economy.[37] A vocational expert's testimony may constitute substantial evidence of the number of jobs that exist in the national economy.[38] The ALJ's decision regarding the number of alternative occupations must be supported by substantial evidence.[39]

At step five, the ALJ considers the claimant's background and RFC, along with the testimony of the vocational expert, to decide whether the claimant can perform available jobs notwithstanding his functional limitations.[40] If the vocational expert's "opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the *Dictionary*, then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled":[41]

---

[36] *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). *See* 20 C.F.R. § 416.920(g).

[37] *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 2011).

[38] *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

[39] *Farias v. Colvin*, 519 F. App'x 439, 440 (9th Cir. 2013) (unpublished). *See Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[40] 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g), 416.960(c); *Tackett v Comm*, 180 F.3d at 1100; *Hill*, 698 F.3d at 1161.

[41] *Gutierrez v. Colvin,* 844 F.3d 804, 807 (9th Cir. 2016).

> For a difference between an expert's testimony and the *Dictionary's* listings to be fairly characterized as a conflict, it must be obvious or apparent. This means that the testimony must be at odds with the *Dictionary's* listing of job requirements that are essential, integral, or expected. This is not to say that ALJs are free to disregard the *Dictionary's* definitions or take them with a grain of salt—they aren't. But tasks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about. Likewise, where the job itself is a familiar one—like cashiering—less scrutiny by the ALJ is required.[42]

The ALJ—and the reviewing court—are to consider not only the *Dictionary* and SCO, but also common experience, to determine whether there is an apparent conflict.[43]

Although the Ninth Circuit has not stated equivocally the number of jobs required to be available in the national economy to constitute a "substantial number," it has stated that the number is "close" to 25,000.[44] The court has also

---

[42] *Id.* at 808; *see also* SSR 00-4p ("When a [vocational expert] . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that [vocational expert] . . . evidence and information provided in the [*Dictionary*].").

[43] *Lamear v. Berryhill*, 865 F.3d 1201, 1205–06 (9th Cir. 2017); *see also* SSR 00-4p (requiring the ALJ to consider the *Dictionary* and SCO); SSR 83-14 (referencing the *Dictionary* and SCO)

[44] *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528–29 (9th Cir. 2014) (holding that 25,000 jobs nationally is a significant number, but noting that it was

held that the number of jobs required to constitute a "substantial number" may be satisfied by "work which exists in significant numbers either in the region where such individual lives or in several regions of the country."[45]

The Ninth Circuit has held that when a plaintiff has produced credible evidence of a vast discrepancy between a VE's job numbers and those presumably from the same source that evidence should not be ignored and the record should be developed.[46] Most recently, the Ninth Circuit held that a plaintiff raised a credible argument regarding the number of jobs when Plaintiff's attorney "estimated – using SkillTRAN Job Browser Pro and the same DOT codes the VE had used – that there were" a significantly smaller number of jobs in the national economy than the number cited by the VE.[47]

      b.    *The VE's Testimony*

When given the ALJ's formulated RFC, the VE stated:

> Thank you. Okay. I've got three jobs for the hypothetical individual. I have charge account clerk, DOT Code 205.367-014; sedentary exertional level; SVP 2; 30,033 jobs in the national economy. Food and beverage order clerk; DOT code 209.567-014; sedentary exertional

---

a "close call"); *see also Beltran v. Astrue*, 700 F.3d 386, 390 (9th Cir. 2012) (holding that 1,680 jobs nationally was not significant).

[45] *Gutierrez v Comm,* 740 F.3d at 528.

[46] *Buck v. Berryhill*, 869 F.3d 1040, 1052 (9th Cir. 2017).

[47] *White v. Kijakazi*, 44 F.4th 828, 837 (9th Cir. 2022).

> level; SVP 2; 19, 128 jobs in the national economy. And the third is circuit board touch-up screener DOT code 726.684-110; sedentary exertional level; SVP 2; 37,760 jobs in the national economy. The parameters such as frequency of reaching, with varying extremities, vibration, types of climbing are not addressed in the DOT. That's from my professional experience, working and maintaining a clinical caseload for over 11 years workers' compensation, surveying employers, performing on-site job analyses, interviewing workers, developing modified duties with employers, [inaudible] nationally certified rehabilitation counselor.[48]

When questioned regarding his methodology, the VE responded:

> I do not use Job Browser. The base data for the number is from the Bureau of Labor Statistics. Then I divide the number by the total DOT titles for that standard occupational classification, or SOC group. This method of obtaining estimated job numbers is consistent with the standards of practice for my industry.[49]

    c.    <u>Whether the case should be remanded to obtain testimony regarding regional job numbers</u>

The Court must address the Commissioner's assertion that the case should be remanded for further proceedings because the VE might testify that Plaintiff is capable of performing a sufficient number of jobs in the regional economy to satisfy the requirement that a substantial number of jobs existed in the national economy.[50] While the Court agrees that a substantial number of jobs available in the national economy can be established either by showing a sufficient number of

---

[48] AR 908.

[49] AR 909.

[50] *See* ECF No. 12 at 12-13.

ORDER RULING ON CROSS MOTIONS TO REMAND - 15

jobs in the national economy or in the region in which Plaintiff resides,[51] the ALJ did not question the VE regarding regional numbers, nor did the VE offer any testimony regarding regional numbers.  In his decision, the ALJ did not consider regional numbers when finding Plaintiff was capable of performing a substantial number of jobs in the national economy and based her reasoning only on the testimony given by the VE as to national numbers.  By raising the issue that the ALJ could have relied upon testimony regarding regional numbers to find Plaintiff capable of performing work, the Commissioner is impermissibly offering a justification which was not offered by the ALJ.[52]

    d. <u>Whether Evidence of Conflicting SkillTRAN Job Brower Pro Numbers is Relevant</u>

The Commissioner fails to address the argument that the evidence provided by Plaintiff's attorney that SkillTRAN Job Brower Pro indicates far fewer numbers for the jobs cited by the VE. [53] Plaintiff does not argue, however, that this error forms a basis for remand for calculation of benefits and instead argues that the case should be remanded for further proceedings if it is not remanded for calculation based on the ALJ's improper consideration of the medical opinions.[54]

---

[51] *See Gutierrez v Comm,* 740 F.3d at 528.

[52] *Sec. & Exch. Comm'n v. Chenery Corp.,* 318 U.S. 80 (1943).

[53] ECF No. 12.

[54] ECF No. 8 at 18.

The Court agrees that remand for further proceedings is the proper remedy and does so.

The Ninth Circuit held that job numbers obtained by a plaintiff using Job Browser Pro was relevant evidence and noted that SkillTRAN Job Browser Pro is a data source and methodology frequently relied upon by SSA in its determination of cases.[55] Moreover, the Ninth Circuit has ruled that an ALJ's decision was not supported by substantial evidence when an ALJ failed to address a discrepancy between Job Browser Pro numbers and a VE's alternate method of calculating the number of jobs available.[56] The Court concludes that the ALJ needs to more fully develop the record as to this issue.

3. Conclusion

In summary, the purported reasons highlighted by Plaintiff do not serve as a basis for remand for calculation of benefits. The Court concludes that further development of the record is warranted.

---

[55] *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1194 (9th Cir. 2022).

[56] *White v. Kijakazi*, 44 F.4th at 837 (quoting *Chavez v. Berryhill,* 895 F.3d 962, 966 (7th Cir. 2018)).

### III. Conclusion

Plaintiff seeks a remand for payment of benefits. However, further proceedings are necessary for the reasons set forth above.[57] Accordingly, the Court remands the case for further proceedings – yet again- and given the history of this case, urges a prompt and diligent review.

Accordingly, **IT IS HEREBY ORDERED**:

1. The Commissioner's Motion to Remand, **ECF No. 12**, is **GRANTED**.

2. The Clerk shall **TERM** Plaintiff's Opening Brief, **ECF No. 8**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings.

4. The case shall be **CLOSED**.

IT IS SO ORDERED.  The Clerk's Office is directed to file this order and provide copies to all counsel.

**DATED** this 9th day of April 2024

*Edward F. Shea*
_____
EDWARD F. SHEA
Senior United States District Judge

---

[57] *See Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

ORDER RULING ON CROSS MOTIONS TO REMAND - 18